UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-0262 (JNE/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ember Shawndale White, | |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge on Defendant Ember Shawndale White's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21). The motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court recommends that the motion be denied because the evidence was seized during a lawful search incident to arrest and, in the alterative, the evidence inevitably would have been discovered when the vehicle in which Mr. White was a passenger was inventoried.

**I.    Background**

Mr. White was charged by indictment with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(d)(1), and 2461(c). (Indictment, Oct. 5, 2022, Dkt. No. 1.) He filed, among other motions, a motion to suppress evidence seized during a warrantless search of a car on July 23, 2021. (Dkt. No. 21.) The Court held a hearing on the motion on November 28, 2022. Assistant U.S. Attorney

Matthew Ebert represented the United States, and Assistant Federal Defender Douglas Olson represented Mr. White. The United States introduced 18 exhibits, and Mr. White offered 2 exhibits. (*See* Ex. List, Dkt. No. 28.) Saint Paul Police Officer Christopher Hamblin testified on behalf of the United States. Mr. White filed a post-hearing brief on December 30, 2022 (Dkt. No. 38), and the United States filed a post-hearing brief on January 13, 2023 (Dkt. No. 39), at which time the Court took the motion under advisement.

Mr. White is seeking to suppress evidence obtained as a result of a warrantless search of a car on July 23, 2021, including a "gun and contraband." (Def.'s Post-Hr'g Mem. at 1, Dkt. No. 38). Mr. White argues that the warrantless search of the car violated *Arizona v. Gant*, 556 U.S. 332, 343 (2009). The United States responds that Mr. White's reliance on *Gant* is misplaced because it was reasonable for the searching officer to believe that evidence of the offense giving rise to Mr. White's arrest might be found in the car. (Gov't's Post-Hr'g Mem. at 10–12, Dkt. No. 39.) Thus, the United States argues, police were justified in searching the car incident to a lawful arrest. In the alternative, the United States argues that the gun inevitably would have been found when the car's contents were inventoried. (*Id.* at 13.)

**II.     Facts**

Saint Paul Police Officer Christopher Hamblin has worked for the Saint Paul Police Department for nine years. (Mot. Hr'g Tr. 5:6–13, Dkt. No. 32.)[1] He worked the first few years as a patrol officer, then transferred to the Gang and Gun Unit, where he worked for

---

[1] The motion hearing transcript is currently filed under seal, but the Court has not included any personal identifiers or confidential information in this Report and Recommendation.

about four years. (*Id.* 5:15–6:3.) His duties in the Gang and Gun Unit included monitoring social media, which familiarized him with people in the community. (*Id.* 6:4–12.) As a police officer with the Gang and Gun Unit, Officer Hamblin interacted or met with Mr. White between 5 and 12 times. (*Id.* 6:13–18.) Officer Hamblin currently works in the Criminal Intelligence Unit. (*Id.* 6:19–21.)

On July 15, 2021, Saint Paul police officers (not including Officer Hamblin) responded to a report of shots fired near Rice and Winnipeg streets. (*Id.* 7:13–18, 8:14–15.) Two suspects were involved, one of whom (Demetrius Lott) was arrested that night. (*Id.* 7:19–23.) Investigating officers obtained video footage from store surveillance cameras in the area, and Officer Hamblin viewed the footage a few days later, when he returned to work after a few days off. (*Id.* 8:3–17.)

According to Officer Hamblin's testimony and still images taken from the surveillance video, a dark-colored Volkswagen Jetta was parked across the street from the Winnipeg Market at about 10:00 p.m. on July 15, 2021 (*Id.* 9:1–10, 10:10–13; Gov't's Exs. 1A, 1B.) Mr. White crossed the street from the Jetta toward the surveillance camera. (Mot. Hr'g Tr. 10:10–13, Gov't's Ex. 1B.) Officer Hamblin recognized Mr. White on the video footage from Mr. White's physical characteristics and "past dealings." (Mot. Hr'g Tr. 10:17–20.) Government's Exhibit 1C is a still image of a person, whom Officer Hamblin identified as Mr. White, holding a firearm outside the Winnipeg Market. (*Id.* 11:2–10; Gov't's Ex. 1C.) After the "incident," Officer Hamblin testified, Mr. White ran to the Jetta across the street, got in the car, and left. (Mot. Hr'g Tr. 11:11–12:5; *see* Gov't's Exs. D, E,

3

F.) After Officer Hamblin identified Mr. White to an investigating officer, "the investigator put a pick up and hold out for the vehicle and Mr. White." (Mot. Hr'g Tr. 12:16–18.)

Officer Hamblin described a "pick up and hold" as a "probable cause pick up so you can arrest someone so the investigator can interview them." (*Id.* 12:24–13:3.) The "PC Pickup and Hold" for Mr. White is dated July 22, 2021. (Gov't's Ex. 2.) The incident described on the form is "Dangerous Weapons-Reckless Discharge of Firearm Within a Municipality; Possesses any type of firearm/ammo – Crime of Violence – ineligible under 624.713.1(2)." (*Id.*) The description of the incident states that "[Mr.] White was [involved] in a shootout with Demetrius Deshawn Lott . . . at 135 Winnipeg in front of Winnipeg Market." (*Id.*) The remainder of the description states:

> On 07/15/2021, squads were called to the area of 135 Winnipeg Ave W., on a report of shots fired. 10-.40 caliber casings were recovered and 2-9mm casings were recovered. Surveillance video caught the incident. Lott was arrested that night and is not wanted. WHITE was identified as the second shooter by Gang Unit officer Hamblin. White is wanted for Reckless Discharge (Felony), and Possession of a Firearm by a Person Convicted of a Crime of Violence. White currently has a felony Hennepin County warrant for Simple Robbery, felony warrant out of Ramsey County for Simple Robbery, Domestic out of Ramsey, Threats of Violence out of Ramsey and several Misd. warrants out of Dakota County. All warrants are unconfirmed. Gun has not been recovered. Please collect clothing if it matches clothing in the attached photo.

(*Id.*) The suspect vehicle was described as a dark 2006 Volkswagen Jetta, with an unknown plate and color. (*Id.*)

On July 23, 2021, Officer Hamblin was working general patrol. (Mot. Hr'g Tr. 15:11–18.) He saw an older model, dark-colored Volkswagen Jetta, with two occupants. (*Id.* 16:8–9.) The Jetta matched the description on the PC Pickup and Hold form. (*Id.*

4

25:25–26:4.) When the Jetta turned, Officer Hamblin could see the passenger, who appeared to be Mr. White. (*Id.* 16:23–24.) When the Jetta made a U-turn and came back toward him, Officer Hamblin confirmed the passenger was Mr. White. (*Id.* 16:25–17:2.) Officer Hamblin turned on his lights and stopped the car. (*Id.* 17:10–13.) In addition to the pick up and hold, Officer Hamblin knew about the four outstanding arrest warrants for Mr. White. (*Id.* 17:17–19.)

While Officer Hamblin waited for other officers to arrive at the scene, he "saw Mr. White digging around in the front of the vehicle." (*Id.* 17:24–18:1.) Once other officers arrived at the scene, Mr. White and the driver were removed from the Jetta and taken into custody. (*Id.* 22:4–6; Gov't's Ex. 3.) Because Officer Hamblin believed that Mr. White may have been hiding something illegal when he was moving around in the front of the Jetta, Officer Hamblin searched the front seat area and the glovebox of the car. (Mot. Hr'g Tr. 18:1–4, 19:20–20:1, 27:13–28:5.) The glovebox was locked, but Officer Hamblin found the key on one of the front seats and opened it. (*Id.* 35:13–25, 36:1–4.) He found a firearm inside. (*Id.* 37:14–17.) Officer Hamblin also found several marijuana cigarettes and Mr. White's identification card in the front seat area. (*Id.* 20:1–3.) Mr. White was later booked for "Threats of Violence - Reckless Disregard," which was the basis for the pick up and hold for the July 15, 2021 incident, as well as the four pending arrest warrants (for robbery–simple felony, firearm violation–felony, simple robbery, and disorderly conduct). (*Id.* 24:6–15, 38:16–21; Gov't's Ex. 6.)

After Mr. White and the driver of the Jetta were taken into custody, Officer Hamblin was not aware of any other person to take custody of the car. (Mot. Hr'g Tr. at 25:21–24.)

The Saint Paul Police Department Towing Authority policy provides that "[a] vehicle may be impounded for safekeeping if the driver, operator, or person in physical control of the vehicle is taken into custody and the driver is unable to make arrangements for the vehicles, and there is not another responsible person." (Gov't's Ex. 7.) Officer Hamblin also believed that the Jetta was evidence in the shooting. (Mot. Hr'g Tr. 26:5–7.) The towing policy further provides that a vehicle may be towed if it is evidence of a crime. (Gov't's Ex. 7.) The Jetta was towed for these reasons on July 23, 2021. (Mot. Hr'g Tr. 26:8–10.)

Over and above the towing policy, the City of Saint Paul also has an inventory policy that requires the police to inventory a vehicle before towing it. (*See id.* 26:11–12; Gov't's Ex. 8.) With respect to Officer Hamblin's opening of the glove compartment, the inventory policy states that "any container(s) discovered during the inventory search may be opened if the officers are unable to ascertain from examining the containers (sic) exterior what is inside." (Gov't's Ex. 8.) Officer Hamblin believed that officers conducted an inventory search of the Jetta after it was towed. (Mot. Hr'g Tr. 26:21–24.) The Incident Report for July 23, 2021, confirms Officer Hamblin's belief; it indicates that the Jetta was towed to a city lot by a towing contractor; the reason for the tow was an arrest; and the vehicle inventory was described as "[n]othing of value," indicating that the Jetta was, in fact, inventoried. (Gov't's Ex. 9 at 3.)

### III. Discussion

Under the Fourth Amendment,

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Law enforcement may conduct a search without a warrant in very limited circumstances, one of which is that "a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). The area within an arrestee's immediate control "mean[s] the area from within which he might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763. The search-incident-to-arrest exception described in *Chimel* was founded on the rationales of "officer safety and evidence preservation." *See Arizona v. Gant*, 556 U.S. 332, 339 (2009). Under *Chimel*, "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at 339.

The *Gant* Court also concluded, aside from *Chimel*, that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* at 335, 343 (citing *Thornton v. United States*, 541 U.S. 625, 632 (2004) (Scalia, J. concurring)). The Court contrasted an arrest for a traffic violation, which provides "no reasonable basis to believe the vehicle contains relevant evidence," with an arrest for other offenses, which may "supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 343–44. Thus, *Gant* instructs that either "the possibility of

7

access" or "the likelihood of discovering offense-related evidence" may justify a search incident to arrest. *See id.* at 344.

In *Gant*, the defendant was arrested for driving without a license. *Id.* at 337. After he was arrested and locked in the backseat of a police car, officers searched his car and found drugs and a gun. *Id.* at 336. There was no possibility he could access a weapon or destroy evidence located in his car, because he was restrained and not within reaching distance. *Id.* at 344. Nor was there an evidentiary basis for the search because the defendant "was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of [his] car." *Id.* Therefore, the search was unreasonable. *Id.*

In this case, Mr. White argues that the search of the Jetta was not authorized under the *Chimel* rationale described in *Gant*, and the Court agrees. At the time of the search, both Mr. White and the driver of the Jetta were in custody and neither could access or destroy evidence in the Jetta. But this conclusion does not necessarily invalidate the search, because an officer "may search a vehicle incident to a recent occupant's arrest . . . if it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. In the instant case, the pick up and hold for Mr. White, which provided the basis for his arrest, was for reckless discharge of a firearm and for possession of a firearm by a prohibited person.

With respect to whether it was reasonable to believe that the Jetta contained evidence of these offenses, Mr. White argues "there was no *concurrent* unlawful conduct or *recent* crime to justify the warrantless search of the locked glove compartment of the

8

car." (Def.'s Post-Hr'g Mem. at 4) (emphasis added). But *Gant* does not require "concurrent" or "recent" conduct,[2] and Mr. White cites no legal authority to support his argument. Moreover, the incident for which Mr. White was arrested occurred only eight days before the search, and the nature of the evidence—a firearm—was not ephemeral.

The Court finds it was reasonable to believe that the Jetta would contain evidence relevant to the offense of arrest. The Jetta in which Mr. White was a passenger on July 23 was similar in appearance to the vehicle observed in connection with the July 15 shooting. Officer Hamblin had identified Mr. White in the video surveillance from July 15 as the person holding a firearm and as the passenger in the Jetta on July 23. The Pickup and Hold form stated the gun had not been recovered. While waiting for backup officers to arrive at the scene on July 23, Officer Hamblin saw Mr. White moving around in the front of the Jetta, which led Officer Hamblin to believe that Mr. White may have been hiding something illegal. Consequently, the Court concludes that the search of the Jetta was a constitutional search incident to arrest.

The United States advances a second basis for the legality of the search: that the firearm inevitably would have been discovered when the Jetta's contents were inventoried. The inevitable discovery doctrine applies if "the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact was not acquired (or

---

[2] *Gant* does use the adjective "recent" to describe the "occupant" of a vehicle, *e.g.*, 556 U.S. at 341, thus instructing that only if the individual was in the car recently will a search of the car for evidence of a crime be constitutional. (There is no argument that Mr. White was not recently in the Jetta at the time Officer Hamblin searched it.) But the word "recent" nowhere modifies either the word "crime" or the words "unlawful conduct" in *Gant*.

9

reacquired) by these lawful means." *United States v. Baez*, 983 F. 3d 1029, 1037 (8th Cir. 2020).

The Eighth Circuit has held that in order to avail itself of the inevitable discovery doctrine, the United States must show both "(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997). The Eighth Circuit has acknowledged, however, that it has sometimes omitted the second requirement, and that the omission of the second requirement is consistent with the Supreme Court's analysis of the inevitable discovery doctrine. *Baez*, 983 F.3d at 1038–39 (8th Cir. 2020) (describing "two strands" of law in the Eighth Circuit on inevitable discovery, under one of which the existence of "a substantial, alternative line of investigation" must be proven by the United States, and under the second of which that element is omitted, and noting that the second is consistent with the Supreme Court's opinion in *Nix v. Williams*, 467 U.S. 431, 444 (1984)), *cert. denied*, 141 S. Ct. 2744 (2021). The *Baez* court commented that "we need not decide which" of the two strands of Eighth Circuit law is correct, because in that case there was evidence of a substantial, alternative line of investigation. *Id.* at 1039. In an earlier case, Judge Steven M. Colloton noted in a concurrence that the Eighth Circuit's adherence to a two-strand analysis was inconsistent with the Supreme Court's *Nix* opinion: "Even if the police were not actively pursuing an alternative line of investigation at the time of police error or misconduct, for example, the government may well be able to establish that the execution of routine police

10

procedure or practice inevitably would have resulted in discovery of disputed evidence." *United States v. Thomas*, 524 F.3d 855, 862 (8th Cir. 2008) (Colloton, J., concurring).

In the case at bar, in arguing for the inevitable discovery of the gun, the United States relies on a post-*Nix* Eighth Circuit case of the type whose inconsistency with *Nix* was recognized in *Baez* and by Judge Colloton's *Thomas* concurrence. *See United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003) ("For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered in the absence of police misconduct, *and the police must have been [pursuing] a substantial, alternative line of investigation*.") (emphasis added).

The United States may be relying on *Alvarez-Gonzalez* because there was a substantial, alternative line of investigation in this case. The Saint Paul Police Department's towing policy applied to the situation and required the Jetta to be towed, as both Mr. White and the driver were in custody and not available to drive the vehicle. Nor was any other licensed driver available. Once the Jetta was towed, the Saint Paul Police Department's inventory policy required an inventory of the Jetta, and an inventory as described in that policy would have required the opening of the glove compartment, which would have led to the discovery of the gun. The towing and inventorying of the Jetta was a substantial, alternative line of investigation that the Saint Paul Police were pursuing. The Court finds that the United States has shown that the gun and other evidence inevitably would have been discovered even if Officer Hamblin's initial search of the Jetta were constitutionally infirm. Thus, the inevitable discovery doctrine provides a second basis to deny the motion to suppress.

## IV. Recommendation

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Ember Shawndale White's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21) be **DENIED**.


Date:  February 9, 2023                     *s/ John F. Docherty*
                                            JOHN F. DOCHERTY
                                            United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).